IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TREMAR HARRIS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>OFFICER WILLIAM RENTZ, individually, OFFICER JOHN DOE 1-3, individually,<br><br>　　　　Defendants. | Civil Action No.<br>2:24-CV-9 |

**DEFENDANT WILLIAM RENTZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant William Rentz files this Motion for Partial Summary Judgment and Incorporated Memorandum of Law In Support pursuant to Federal Rule of Civil Procedure 56.[1]

Plaintiff's claims for compensatory damages stemming from his federal claims are barred by the Prison Litigation Reform Act because he did not suffer more than a *de minimis* physical injury. Further, any claim related to Officer Rentz's alleged use of a "shock shield" on Plaintiff fails because the record in this case demonstrates that Officer

---

[1] In addition to Officer Rentz, Plaintiff has sued three fictious "John Doe" defendants. Plaintiff's Complaint makes clear that these three "John Doe" defendants are the three other jailers that were in Plaintiff's cell with Officer Rentz: Cannon McLeod, Daydan Brannon, and Ansley Fennell. *See* doc. 1 at ¶ 18. Instead of amending his Complaint to name these jailers, Plaintiff instead filed a separate lawsuit against them that is pending in this Court. *See Harris v. Brannon, et al.*, No. 2:24-CV-56.

1

Rentz did no such thing. Moreover, Plaintiff's state law claims are barred by official immunity because the record does not contain evidence that Officer Rentz acted with "actual malice" in restraining Plaintiff. Finally, Plaintiff's claim for intentional infliction of emotional distress under Georgia state law fails on the merits. Because there is no genuine issue of material fact as to the above claims, and because Officer Rentz is entitled to judgment as a matter of law on each, Officer Rentz requests that this Court grant summary judgment in his favor on these claims.

## I. STATEMENT OF MATERIAL FACTS

On January 27, 2022, Plaintiff was arrested and booked into the Appling County Jail for possession of drug related objects. Exhibit A, Deposition of Tremar Harris, at 27:5–27:9. From the beginning of his detainment, Plaintiff initiated multiple violent outbursts and exhibited erratic behavior. In the booking holding cell, Plaintiff ripped a mattress off the bed and threw it against the wall. *See* Ex. A at 37:19–37:24. After he was moved to a padded segregation cell, Plaintiff intentionally clogged the toilet in that cell and flooded it. *See* Exhibit D, January 27, 2022 Surveillance Footage, at 1:13:30 p.m. Plaintiff then tried to flood the hallway outside of his cell. *See* Ex. A at 39:25–40:2. Plaintiff repeatedly made threatening gestures towards the surveillance camera in his cell, such as making a throat-slashing gesture or pretending that he was going to shoot the camera. *See, e.g.*, Ex. D at 10:27:00 p.m. through 10:29:20 p.m.

The following day, Plaintiff ripped apart the mattress in his cell. *See* Exhibit E, January 28, 2022 Surveillance Footage, at 3:07:14 p.m. Plaintiff was then placed in the jail's restraint chair for the first time. *See* Ex. E at 3:41:44 p.m. While Plaintiff was being

2

restrained, he attacked the jailers attempting to secure him, kicking and kneeing them repeatedly. *See* Ex. E at 3:43:40 p.m. through 3:35:00 p.m. After he was released from the restraint chair, Plaintiff ripped apart a box of food and smeared the scraps of food all over his cell and on the surveillance camera in the cell. *See* Ex. E at 5:33:30 p.m. through 5:35:52 p.m. Later that night, Plaintiff defaced the wall of his cell with a writing implement. *See* Ex. E at 7:25:33 p.m.

The next day, January 29, 2022, Plaintiff's behavioral problems and violent conduct persisted. Plaintiff threw contaminated toilet water under the door of his cell into the hallway. *See* Exhibit F, January 29, 2022 Surveillance Footage, at 9:30:42 a.m. Plaintiff smeared feces on the door, wall, and surveillance camera in his cell. *See* Ex. F at 10:36:59 a.m. Plaintiff again ripped apart the mattress in his cell. *See* Ex. F at 2:32:47 p.m. through 2:36:00 p.m. Plaintiff followed this up by ripping apart his jumpsuit. *See* Ex. F at 2:39:38 p.m. through 2:40:00 p.m. This resulted in Plaintiff being placed in the jail's restraint chair for a second time. *See* Ex. F at 2:52:00 p.m.

Later that afternoon, while in the hallway outside of his cell, Plaintiff threw a phone at the wall, attempted to rip a file holder off the same wall, and displayed threatening body language to the jailers escorting him before slapping the hat off of one of the jailer's heads and lunging at that jailer menacingly. *See* Exhibit G, Hallway Surveillance Footage, at 4:02:12 p.m. Back in his cell, Plaintiff again smeared feces on the surveillance camera. *See* Ex. F at 4:23:44 p.m. Shortly thereafter, jailers opened the cell to Plaintiff's cell and gave him cleaning supplies. Plaintiff lunged at the jailers and sprayed a bottle full of cleaning solution at one of the jailer's face. *See* Ex. F at 4:40:55 p.m. through

4:43:00 p.m. The jailers had to push Plaintiff back into his cell, at which point Plaintiff tried to attack one of the jailers with the spray bottle. *Id.* Plaintiff was then placed in the restraint chair for the third time.[2] *See* Ex. F at 4:40:00 p.m.

Officer Rentz was aware of Plaintiff's conduct. *See* Exhibit C, Defendant's Responses to Plaintiff's First Interrogatories, at 8. Shortly after Officer Rentz arrived at the facility on January 29, 2022, Plaintiff was captured on the surveillance camera freeing himself from the restraint chair's arm straps. *See* Ex. F at 4:58:00 p.m. through 4:59:00 p.m. Officer Rentz's superior, Amber Brown, asked Officer Rentz to go to Plaintiff's cell and assist three other jailers, Cannon McLeod, Daydan Brannon, and Ansley Fennell, in re-securing Plaintiff in the restraint chair. *See* Ex. C at 8.

Officer Rentz did just that. He walked to Plaintiff's cell and secured him back into the safety restraint chair by tightening the arm straps. *See* Ex. F at 5:00:00 p.m. through 5:02:00 p.m. Officer Rentz and the other jailers then departed Plaintiff's cell. *Id.* Almost immediately thereafter, Plaintiff again freed his arms from the restraint chair. *See* Ex. F at 5:02:00 p.m. through 5:04:00 p.m. Officer Rentz returned to Plaintiff's cell with Officers McLeod, Brannon, and Fennell, this time with handcuffs and leg restraints to secure Plaintiff. *Id.*

---

[2] The above is but a sample of Plaintiff's behavior while housed at the Appling County Jail. A full review of the surveillance footage reveals that Plaintiff's behavioral issues and violent conduct were constant. For instance, Plaintiff would kick and knee the door to his cell for hours at a time, only taking a break to shout. *See* Ex. D at 10:39:05 a.m. through 1:03:38 p.m.

4

Officer Rentz handcuffed Plaintiff's right and left arms to the safety restraint chair. *See* Ex. F at 5:04:30 p.m. through 5:05:30 p.m. Officer Rentz then walked behind Plaintiff, who was slouched over, and used the leg restraints to pull Plaintiff into an upright position. *See* Ex. C at 8; *see also* Ex. F at 5:05:31 p.m. through 5:05:34 p.m. Officer Rentz did not pull the leg restraints tight so as to choke or strangle Plaintiff. *Id.* Officer Rentz did not intend to hurt Plaintiff and later told him that he was "just playing." *See* Ex. A at 59:4–59:18; *see also* Ex. C at 8. The restraint lasted for three seconds or less. *See* Ex. F at 5:05:31 p.m. through 5:05:34 p.m. During this time, a conversation transpired between Officer Rentz and Plaintiff where Officer Rentz asked Plaintiff, "why are you acting the way that you are?" to which Plaintiff replied that he "wanted to go home." *See* Ex. C at 8; *see also* Ex. F at 5:05:31 p.m. through 5:05:34 p.m. Plaintiff suffered no physical injuries and sought no medical treatment. *See* Ex. A at 55:25–56:8. Beyond Officer Rentz telling him that he was "just playing," Plaintiff and Officer Rentz have had no further interactions. *See* Ex. A at 60:1–60:8. The present lawsuit followed, which Plaintiff filed while he was incarcerated. *See* doc. 1 at ¶ 1.

## II. S<small>UMMARY</small> J<small>UDGMENT</small> S<small>TANDARD</small>

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). As such, the entry of summary judgment is appropriate "against a

5

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* The nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899–900 (11th Cir. 2006). Finally, when deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston Cnty. Comm'n*, 414 F. App'x 264, 266 (11th Cir. 2011).

## III. ARGUMENT

### A. Plaintiff is barred from recovering compensatory damages on his federal claims under the Prison Litigation Reform Act.

Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has interpreted this provision as prohibiting a prisoner from recovering compensatory damages unless he can show that he suffered a physical injury. *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015). Absent a physical injury, a prisoner may recover only nominal and punitive damages on a successful claim. *Hoever v. Marks*, 993 F.3d 1353, 1358–59 (11th Cir. 2021). Further, "in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), op. reinstated in relevant part on reh'g en banc, 216 F.3d 970 (11th Cir. 2000).

The line between a *de minimis* injury upon which a plaintiff cannot recover compensatory damages and an injury that rises above that level, and which can serve as the basis for compensatory damages, is blurry. What is clear, however, is that scrapes, scratches, and minor bruising or swelling are the sorts of trivial harms that are the hallmark of *de minimis* injuries. *See Pierre v. Padgett*, 808 F. App'x 838, 843 (11th Cir. 2020); *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 (11th Cir. 2009) (holding that temporary chest pain, headaches, difficulty breathing, and back pain were *de minimis* injuries); *Johnson v. Georgia*, No. 6:06-CV-49, 2007 WL 601619, at *3 (M.D. Ga. Feb. 16. 2007) (finding that a more than *de minimis* injury "is not a sore muscle, an aching back, a scratch,

7

an abrasion, a bruise, etc., which lasts even up to two or three weeks."); *compare Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (holding that "lacerations, injuries to [the plaintiff's] teeth and jaw, [and] damage to his left eardrum" were not *de minimis* injuries.").

Plaintiff, by his own admission, was not injured by Officer Rentz. *See* Ex. A at 55:25–56:2 ("Q: You did not suffer any physical injuries as a result of this incident, did you? A: No, sir."). Plaintiff did not seek or receive any medical treatment. *Id.* at 56:5–56:8 ("Q: But you didn't seek any medical treatment? A: They didn't give me any. Q: Did you ask for any? A: No, sir."); *see also* Exhibit B, Plaintiff's Responses to Defendant's First Interrogatories, at 5. As such, there are no medical records to support any claim for physical injury. Plaintiff did not complain about being in pain to anyone at the jail. *See* Ex. A at 56:16–56:18. The only ailments that Plaintiff can point to are that he "couldn't breathe," for an unspecified amount of time and that his neck was sore for a few days. *See* Ex. A at 56:4–56:15.

These harms—a sore neck and temporary trouble breathing—are precisely the type that the Eleventh Circuit and its constituent courts have identified as not rising above the level of *de minimis*. *See Quinlan*, 329 F. App'x at 249. Because Plaintiff's physical injuries were, at the most, *de minimis*, he is barred from recovering compensatory damages under the PLRA.[3] Accordingly, Officer Rentz requests that this Court enter

---

[3] It is undisputed that Plaintiff was incarcerated at the time that he filed his lawsuit (*see* doc. 1 at ¶ 1) and that the PLRA and § 1997e(e) is applicable to him.

8

summary judgment in his favor on any claims for compensatory damages which are derived from his federal claims.

> **B. Officer Rentz did not use a shock shield on Plaintiff and Officer Rentz is entitled to summary judgment on all of Plaintiff's claims that are derived from that allegation.**

In his Complaint, Plaintiff alleged that Officer Rentz entered Plaintiff's cell with a "shock shield" and delivered several shocks to Plaintiff. *See* doc. 1 at ¶¶ 10–11. This alleged conduct is, in part, the basis for three of the four counts in Plaintiff's Complaint. *Id.* at ¶¶ 30, 54, 61.[4]

The problem for Plaintiff is that the record shows that Officer Rentz did not use a shock shield on him. This is evident from the surveillance footage that is in the record, which depicts all of the interactions between Officer Rentz and Plaintiff. *See generally* Ex. D, E, and F. Further, at his deposition, Plaintiff reviewed footage of his interactions with the jailers who were holding "shock shields" and testified that none of the jailers were Officer Rentz. *See* Ex. A at 47:11–47:21; 53:22–54:5. Indeed, Plaintiff went on to testify that Officer Rentz did not use a "shock shield" on him, *see* Ex. A at 57:6–57:18; 58:20–58:24, and that his allegations in Paragraphs 10 and 11 of his Complaint were not true. *See* Ex. A at 58:25–59:3.

---

[4] Plaintiff's Complaint alleges distinct use-of-force events by Officer Rentz against Plaintiff: the use of a "shock shield" and the use of leg restraints. *See* doc. 1 at ¶¶ 11, 13. However, Plaintiff groups the two alleged incidents together and only pleads single claims of "cruel and unusual punishment" and "assault and battery" which subsume both use of force events. *See generally* doc. 1 at 5, 10. Out of an abundance of caution, Officer Rentz treats Plaintiff's Complaint as though it alleged discrete "cruel and unusual punishment" and "assault and battery claims" for each alleged incident.

Accordingly, it is undisputed by the parties that Officer Rentz did not use a "shock shield" on Plaintiff. As such, there is no genuine issue of material fact, and Officer Rentz is entitled to judgment as a matter of law on Plaintiff's claims that are predicated on the allegation that Officer Rentz used a "shock shield" on him. Thus, Officer Rentz requests that the Court enter summary judgment in his favor on those claims.

### C. Officer Rentz is entitled to official immunity as to all of Plaintiff's state law claims.

The doctrine of official immunity offers public officers and employees protections from suit in their personal capacities. *Schultz v. Lowe*, 364 Ga. App. 345, 348 (2022). Under the Georgia Constitution:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

Ga. Const. of 1983, Art. I, Sec. II, Para. IX(d). Accordingly, official immunity protects public agents from liability for discretionary actions taken within the scope of their official authority and done without wilfulness, malice, or corruption. *Todd v. Brooks*, 292 Ga. App. 329, 330 (2008).

#### i. *Officer Rentz's restraint of Plaintiff was a discretionary act.*

Official immunity will bar claims against government officials in their individual capacities unless the claim is for "ministerial acts negligently performed, or acts performed with malice or an intent to injure." *Brantley v. Jones*, 363 Ga. App. 466, 475 (2022) (quoting *Grammens v. Dollar*, 287 Ga. 618, 619 (2010)). A ministerial act is one that

10

is "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *McDowell v. Smith*, 285 Ga. 592, 593 (2009). Conversely, a discretionary act is one that "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Teston v. Collins*, 217 Ga. App. 829, 830 (1995). The determination of whether the action at issue is ministerial or discretionary is made on a case-by-case basis, and the dispositive issue is the character of the specific actions complained of, not the general nature of the job. *Barnett v. Caldwell*, 302 Ga. 845, 848 (2018).

Here, Plaintiff does not—and cannot—dispute that, at all times relevant, Officer Rentz was engaged in the performance of a discretionary act within the scope of his official authority. *See* doc. 19-1 at 9 ("It is undisputed that Defendant Rentz was acting in the scope of his discretionary authority when he wrapped the leg shackles around Plaintiff's throat."). Accordingly, Officer Rentz is entitled to official immunity unless he acted with actual malice.

        **ii.**    *Officer Rentz did not act with actual malice in restraining Plaintiff.*

In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. *See Wilson v. Cromer*, 356 Ga. App. 763, 765 (2020). The Supreme Court of Georgia has intentionally set a high bar for demonstrating actual malice. *See Tuggle v. Rose*, 333 Ga. App. 431, 435 (2015). Actual malice does not include implied malice, and, thus, "conduct exhibiting a reckless disregard for others," or "acts involving reckless disregard for the safety of others," do

11

not fall within the ambit of actual malice. *Merrow v. Hawkins*, 266 Ga. 390, 392 (1996) (internal citations omitted). Indeed, "[e]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal." *Wilson*, 356 Ga. App. at 765–66 (quoting *Selvy v. Morrison*, 292 Ga. App. 702, 704 (2008)). Put plainly, "[a]ctual malice requires more than harboring bad feelings about another." *Butler v. McNeal*, 252 Ga. App. 68. 69 (quoting *Adams v. Hazelwood*, 271 Ga. 414, 415 (1999)).

Actual malice is perhaps best illustrated by an examination of what courts have deemed is *not* actual malice.[5] For example, the Court of Appeals of Georgia held that a police officer's threats, use of profanity, and the act of slamming a motorist against his vehicle were insufficient to establish actual malice. *See generally Tittle v. Corso*, 256 Ga. App. 859 (2002). Similarly, the Court found no actual malice where police officers swore at the plaintiff, banged on her door, threated to break down the door, grabbed the plaintiff's arm, slammed her face into the wall, kicker her legs out from under her, and in the process, kicked her ten-year-old son in the mouth. *See Selvy*, 292 Ga. App. at 704. The *Selvy* court went on to hold:

> The evidence in this case may have shown poor judgment, rude behavior, and reckless disregard for the rights and safety of others on the part of the officers, but . . . we do not find that this evidence created a jury question concerning whether the officers had actual malice toward or an actual intent to injure [the plaintiff].

*Id.* at 705.

---

[5] In each of the cases discussed, the Court granted summary judgment for the Defendant on official immunity grounds.

In another instance, a teacher placing a student in a headlock in front of other students for a "substantial period of time" was not, by itself, sufficient to demonstrate actual malice so as to overcome official immunity. *Tuggle*, 333 Ga. App. at 434–36. Finally, the United States District Court for the Middle District of Georgia, applying Georgia law, found that there was no evidence of actual malice where a school resource officer placed a student in a quasi-chokehold to break up a fight and escorted her to the school office. *See Jordan v. Blackwell*, No. 5:06-CV-214, 2008 WL 4449576, at *9–11 (M.D. Ga. Sept. 29, 2008).

Further, Georgia courts have repeatedly emphasized that actual malice requires "an actual intent to cause harm to the plaintiff," not just an intent to do the act resulting in the injury. *Kidd v. Coates*, 271 Ga. 33, 33 (1999); *Adams*, 271 Ga. at 415 (rejecting "the position that proof of 'ill will' is itself enough to establish actual malice under Art. I, Sec. II, Par. IX (d).").

The record in this case does not support an inference that Officer Rentz acted with "an actual intent to cause harm to the plaintiff." Officer Rentz has specifically stated that "he did not intend to hurt Plaintiff." *See* Ex. C at 8. Plaintiff testified that he "ain't never had no problem with [Officer Rentz]" until the events complained of in this lawsuit. *See* Ex. A at 54:15–55:6. Plaintiff also testified that, before January 29, 2022, he never had any encounters with Officer Rentz where he felt that Officer Rentz "meant to harm [Plaintiff]" or where he felt like Officer Rentz did not like him. *Id.* at 26:20–27:4. Further, Plaintiff testified that Officer Rentz, later the same day, told him that he was "just playing." *Id.* at

13

59:4–59:18. There are no other undisputed facts in the record which speak, in any way, to Officer Rentz's motivation or intent to cause harm to Plaintiff.[6]

Plaintiff's position, seemingly, is that the surveillance footage demonstrates actual malice so as to defeat official immunity. *See* doc. 19-1 at 8–9. But as *Tuggle*, *Tittle*, *Selvy*, and *Blackwell* establish, the act itself—without something more—is insufficient to prove actual malice. There needs to be something more to show an actual intent to cause harm to the plaintiff. That "something more" is absent in this case. The record in this case shows that Plaintiff and Officer Rentz had never had any problems with one another, that Officer Rentz did not act with the actual intent to cause harm to Plaintiff, and, as discussed, *supra*, that Officer Rentz did not, in fact, cause harm to Plaintiff. As such, Plaintiff cannot demonstrate that Officer Rentz acted with actual malice. Officer Rentz is entitled to official immunity as to Plaintiff's state law claims, and, thus, this Court should enter summary judgment in Officer Rentz's favor as to all of Plaintiff's state law claims.

### D.   Plaintiff's intentional infliction of emotional distress claim fails on the merits.

Plaintiff's fourth "claim for relief" is one for intentional infliction of emotional distress under Georgia state law. This claim fails on the merits because the record in this

---

[6] Plaintiff alleges that Officer Rentz commented that he would "put [Harris] back in the cotton field," but that allegation is belied by the record. Plaintiff testified that Officer Rentz did not say "cotton field," but rather "the field." *See* Ex. A at 53:8–53:12. For his part, Officer Rentz flatly denies that he made such a comment. *See* Ex. C at 8. None of the other three officers in the cell have corroborated Plaintiff's allegation that such a statement was made. *See* Ex. H at 10. And even if this allegation were supported by evidence, this kind of contemporaneous comment sheds no light on whether Officer Rentz acted with the actual intent to cause harm to Plaintiff. *See, e.g.*, *Selvy*, 292 Ga. App. at 704.

14

case does not demonstrate Plaintiff suffered "severe" emotional distress. To prevail on a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *McClendon v. Harper*, 349 Ga. App. 581, 589 (2019). The fourth element warrants special mention because it is apt for consideration and resolution at the summary judgment stage.

Plaintiff cannot satisfy the fourth required element of a claim for intentional infliction of emotional distress—showing that the emotional distress he allegedly suffered was severe. *See Abdul-Malik*, 297 Ga. App. at 858. That is because "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress." *Sevcech v. Ingles Mkts.*, 222 Ga. App. 221, 223–24 (1996). "Whether severe emotional distress can be found, based on the evidence presented, **is a question for the court to decide.**" *The Plantation at Bay Creek Homeowners Ass'n v. Glasier*, 349 Ga. App. 203, 212 (2019) (emphasis supplied).

The record in this case indicates that Plaintiff has been diagnosed with and received treatment for bipolar schizoaffective disorder. *See* Ex. A at 64:18–65:20. That diagnosis pre-existed the events of January 29, 2022. *Id.* However, the record is bereft of any evidence that Plaintiff ever sought medical or psychiatric treatment for mental and emotional injuries arising from his encounter with Officer Rentz. Indeed, Plaintiff seemed

15

to indicate in his deposition the *only* facilities where he had ever received any such treatment was at Georgia Regional (where he has been placed on 5150 holds) and at the Appling Integrated Treatment facility where he is currently incarcerated. *See* Ex. A at 70:5–70:15. Further, there is no evidence in the record of any other diagnoses that would buttress Plaintiff's contention that he has suffered "severe" emotional distress.

Those facts are fatal to Plaintiff's intentional infliction of emotional distress claim. Georgia courts have repeatedly held that a failure to seek medical or psychiatric treatment for alleged mental or emotional injuries means that a plaintiff cannot meet the stringent burden of showing that his distress was sufficiently severe. *See Doe v. Roe*, 362 Ga. App. 23, 31 (2021) (citing *Jones v. Warner*, 301 Ga. App. 39, 43 (2009)); *see also Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 207–08 (2015) ("To demonstrate that the emotional distress she suffered was severe, a plaintiff must show, at the very least, that physical and/or mental manifestations of that distress required her to seek medical or psychological treatment."); *Jones v. Fayette Family Dental Care*, 312 Ga. App. 230, 233–34 (2011) (holding that evidence of distress including a depressed sex drive was insufficient as a matter of law to prove severe emotional distress, given that the plaintiff "sought no treatment from any type of doctor, psychiatrist, psychologist, or counselor."); *Abdul-Malik*, 297 Ga. App. at 858 (holding that emotional distress was not severe where the plaintiff did not take medication or seek professional help); *Odem v. Pace Academy*, 235 Ga. App. 648, 656 (1998) (holding that where the plaintiff claimed stress, humiliation, and high blood pressure but sought no professional advice from doctors or counselors, emotional distress was not severe).

Accordingly, Plaintiff's failure to ever seek treatment for any emotional or mental health issue claimed to stem from his encounter with Officer Rentz means that he cannot satisfy the fourth element of an intentional infliction of emotional distress claim. Therefore, Officer Rentz should be awarded summary judgment on that claim.

## IV. CONCLUSION

The record in this case is clear that Plaintiff did not suffer greater than *de minimis* physical injuries. As a result, he cannot recover compensatory damages on his federal law claims under the PLRA. Further, any claim related to Officer Rentz's alleged use of a "shock shield" on Plaintiff fails because the record in this case demonstrates that Officer Rentz did no such thing. Moreover, Plaintiff's state law claims are barred by official immunity because the record does not contain evidence that Officer Rentz acted with "actual malice" in restraining Plaintiff. Finally, Plaintiff's claim for intentional infliction of emotional distress under Georgia state law fails on the merits because the record lacks any evidence that the mental or emotional injuries he claims to have suffered are sufficiently "severe."

Because there is no genuine issue of material fact as to the above claims, and because Officer Rentz is entitled to judgment as a matter of law on each, Officer Rentz requests that this Court grant summary judgment in his favor on these claims.

Submitted this 22nd day of August, 2024.

                                                OLIVER MANER LLP

| | |
|---|---|
| Post Office Box 10186 | ***/s/ Patrick T. O'Connor*** |
| Savannah, GA 31412 | PATRICK T. O'CONNOR |
| (T) 912 236-3311 | Georgia Bar No. 548425 |
| (F) 912 236-8725 | BEN T. TUTEN |
| pto@olivermaner.com | Georgia Bar No. 299110 |
| btuten@olivermaner.com | |
| | ***Attorneys for Defendant Rentz*** |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing, by e-notification and e-service to the following:

M. Waite Thomas, Esq.
TAYLOR ODACHOWSKI SCHMIDT & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, GA 31522
wthomas@tosclaw.com

Harry M. Daniels, Esq.
LAW OFFICES OF HARRY M. DANIELS, LLC
4751 Best Road, Suite 490
Atlanta, GA 30337
daniels@harrymdaniels.com

Submitted this 22nd day of August, 2024.

OLIVER MANER LLP

Post Office Box 10186
Savannah, GA 31412
(T) 912 236-3311
(F) 912 236-8725
pto@olivermaner.com
btuten@olivermaner.com

*/s/ Patrick T. O'Connor*
PATRICK T. O'CONNOR
Georgia Bar No. 548425
BEN T. TUTEN
Georgia Bar No. 299110

*Attorneys for Defendant Rentz*

19