IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TREMAR HARRIS,<br><br>      Plaintiff,<br><br>v.<br><br>OFFICER WILLIAM RENTZ, individually, OFFICER JOHN DOE 1-3, individually,<br><br>      Defendants. | Civil Action No.<br>2:24-CV-9 |

**DEFENDANT WILLIAM RENTZ'S STATEMENT OF MATERIAL FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant William Rentz files this Statement of Material Facts and Conclusions of Law in support of his Motion for Partial Summary Judgment pursuant to Local Rule 56.1.

**STATEMENT OF MATERIAL FACTS**

1. Plaintiff Tremar Harris was arrested and booked into the Appling County Jail for possession of drug related objects on January 27, 2022. Exhibit A, Deposition of Tremar Harris, at 27:5–27:9.

2. From the beginning of his detainment, Plaintiff initiated multiple violent outbursts and exhibited erratic behavior. In the booking holding cell, Plaintiff ripped a mattress off the bed and threw it against the wall. *See* Ex. A at 37:19–37:24.

3. After he was moved to a padded segregation cell, Plaintiff intentionally clogged the toilet in that cell and flooded it. *See* Exhibit D, January 27, 2022 Surveillance Footage, at 1:13:30 p.m.

4. Plaintiff then tried to flood the hallway outside of his cell. *See* Ex. A at 39:25–40:2.

5. Plaintiff repeatedly made threatening gestures towards the surveillance camera in his cell, such as making a throat-slashing gesture or pretending that he was going to shoot the camera. *See, e.g.,* Ex. D at 10:27:00 p.m. through 10:29:20 p.m.

6. The following day, Plaintiff ripped apart the mattress in his cell. *See* Exhibit E, January 28, 2022 Surveillance Footage, at 3:07:14 p.m.

7. Plaintiff was then placed in the jail's restraint chair for the first time. *See* Ex. E at 3:41:44 p.m.

8. While Plaintiff was being restrained, he attacked the jailers attempting to secure him, kicking and kneeing them repeatedly. *See* Ex. E at 3:43:40 p.m. through 3:35:00 p.m.

9. After he was released from the restraint chair, Plaintiff ripped apart a box of food and smeared the scraps of food all over his cell and on the surveillance camera in the cell. *See* Ex. E at 5:33:30 p.m. through 5:35:52 p.m.

10. Later that night, Plaintiff defaced the wall of his cell with a writing implement. *See* Ex. E at 7:25:33 p.m.

11. The next day, January 29, 2022, Plaintiff's behavioral problems and violent conduct persisted. Plaintiff threw contaminated toilet water under the door of his cell into the hallway. *See* Exhibit F, January 29, 2022 Surveillance Footage, at 9:30:42 a.m.

12. Plaintiff smeared feces on the door, wall, and surveillance camera in his cell. *See* Ex. F at 10:36:59 a.m.

13. Plaintiff again ripped apart the mattress in his cell. *See* Ex. F at 2:32:47 p.m. through 2:36:00 p.m.

14. Plaintiff followed this up by ripping apart his jumpsuit. *See* Ex. F at 2:39:38 p.m. through 2:40:00 p.m.

15. This resulted in Plaintiff being placed in the jail's restraint chair for a second time. *See* Ex. F at 2:52:00 p.m.

16. Later that afternoon, while in the hallway outside of his cell, Plaintiff threw a phone at the wall, attempted to rip a file holder off the same wall, and displayed threatening body language to the jailers escorting him before slapping the hat off of one of the jailer's heads and lunging at that jailer menacingly. *See* Exhibit G, Hallway Surveillance Footage, at 4:02:12 p.m.

17. Back in his cell, Plaintiff again smeared feces on the surveillance camera. *See* Ex. F at 4:23:44 p.m.

18. Shortly thereafter, jailers opened the cell to Plaintiff's cell and gave him cleaning supplies. Plaintiff lunged at the jailers and sprayed a bottle full of cleaning solution at one of the jailer's face. *See* Ex. F at 4:40:55 p.m. through 4:43:00 p.m.

19. The jailers had to push Plaintiff back into his cell, at which point Plaintiff tried to attack one of the jailers with the spray bottle. Ex. F at 4:40:55 p.m. through 4:43:00 p.m.

20. Plaintiff was then placed in the restraint chair for the third time. *See* Ex. F at 4:40:00 p.m.

21. Officer Rentz was aware of Plaintiff's conduct. *See* Exhibit C, Defendant's Responses to Plaintiff's First Interrogatories, at 8.

22. Shortly after Officer Rentz arrived at the facility on January 29, 2022, Plaintiff was captured on the surveillance camera freeing himself from the restraint chair's arm straps. *See* Ex. F at 4:58:00 p.m. through 4:59:00 p.m.

23. Officer Rentz's superior, Amber Brown, asked Officer Rentz to go to Plaintiff's cell and assist three other jailers, Cannon McLeod, Daydan Brannon, and Ansley Fennell, in re-securing Plaintiff in the restraint chair. *See* Ex. C at 8.

24. Officer Rentz did just that. He walked to Plaintiff's cell and secured him back into the safety restraint chair by tightening the arm straps. *See* Ex. F at 5:00:00 p.m. through 5:02:00 p.m.

25. Officer Rentz and the other jailers then departed Plaintiff's cell. *See* Ex. F at 5:00:00 p.m. through 5:02:00 p.m.

26. Almost immediately thereafter, Plaintiff again freed his arms from the restraint chair. *See* Ex. F at 5:02:00 p.m. through 5:04:00 p.m.

27. Officer Rentz returned to Plaintiff's cell with Officers McLeod, Brannon, and Fennell, this time with handcuffs and leg restraints to secure Plaintiff. *See* Ex. F at 5:02:00 p.m. through 5:04:00 p.m.

28. Officer Rentz handcuffed Plaintiff's right and left arms to the safety restraint chair. *See* Ex. F at 5:04:30 p.m. through 5:05:30 p.m.

29. Officer Rentz then walked behind Plaintiff, who was slouched over, and used the leg restraints to pull Plaintiff into an upright position. *See* Ex. C at 8; *see also* Ex. F at 5:05:31 p.m. through 5:05:34 p.m.

30. Officer Rentz did not pull the leg restraints tight so as to choke or strangle Plaintiff. *See* Ex. C at 8; *see also* Ex. F at 5:05:31 p.m. through 5:05:34 p.m.

31. Officer Rentz did not intend to hurt Plaintiff and later told him that he was "just playing." *See* Ex. A at 59:4–59:18; *see also* Ex. C at 8.

32. The restraint lasted for three seconds or less. *See* Ex. F at 5:05:31 p.m. through 5:05:34 p.m.

33. During this time, a conversation transpired between Officer Rentz and Plaintiff where Officer Rentz asked Plaintiff, "why are you acting the way that you are?" to which Plaintiff replied that he "wanted to go home." *See* Ex. C at 8; *see also* Ex. F at 5:05:31 p.m. through 5:05:34 p.m.

34. Plaintiff suffered no physical injuries and sought no medical treatment. *See* Ex. A at 55:25–56:8.

35. Plaintiff has not sought or received treatment for any emotional or mental injuries he is alleged to have suffered as a result of his encounter with Officer Rentz. *See* Ex. A at 70:5–70:15.

36. Beyond Officer Rentz telling him that he was "just playing," Plaintiff and Officer Rentz have had no further interactions. *See* Ex. A at 60:1–60:8.

37. Officer Rentz did not use a shock shield on Plaintiff at any time. *See* Ex. A at 57:6–57:18; 58:20–58:24.

38. Plaintiff filed the present lawsuit while incarcerated. *See* doc. 1 at ¶ 1.

## CONCLUSIONS OF LAW

1. Officer Rentz is entitled to summary judgment on Plaintiff's claims for compensatory damages stemming from his federal claims under the Prison Litigation Reform Act because he did not suffer greater than a *de minimis* physical injury,

2. Officer Rentz is entitled to summary judgment on all of Plaintiff's claims that are predicated on the allegation that Officer Rentz used a "shock shield" on him because the record proves that such an event did not occur.

3. Officer Rentz is entitled to summary judgment on all of Plaintiff's state law claims because he is shielded by official immunity.

4. There is a genuine issue of material fact as to whether Officer Rentz's use of force on Plaintiff was objectively unreasonable, and, thus, Plaintiff is not entitled to summary judgment on his § 1983 excessive force claim.

Submitted this 22nd day of August, 2024.

                                                OLIVER MANER LLP

| | |
|---|---|
| Post Office Box 10186 | ***/s/ Patrick T. O'Connor*** |
| Savannah, GA 31412 | PATRICK T. O'CONNOR |
| (T) 912 236-3311 | Georgia Bar No. 548425 |
| (F) 912 236-8725 | BEN T. TUTEN |
| pto@olivermaner.com | Georgia Bar No. 299110 |
| btuten@olivermaner.com | |
| | ***Attorneys for Defendant Rentz*** |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing, by e-notification and e-service to the following:

M. Waite Thomas, Esq.
TAYLOR ODACHOWSKI SCHMIDT & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, GA 31522
wthomas@tosclaw.com

Harry M. Daniels, Esq.
LAW OFFICES OF HARRY M. DANIELS, LLC
4751 Best Road, Suite 490
Atlanta, GA 30337
daniels@harrymdaniels.com

Submitted this 22nd day of August, 2024.

OLIVER MANER LLP

Post Office Box 10186
Savannah, GA 31412
(T) 912 236-3311
(F) 912 236-8725
pto@olivermaner.com
btuten@olivermaner.com

*/s/ Patrick T. O'Connor*
PATRICK T. O'CONNOR
Georgia Bar No. 548425
BEN T. TUTEN
Georgia Bar No. 299110

*Attorneys for Defendant Rentz*

8