UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| TREMAR HARRIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 2:24-CV-9 |
| | : | |
| OFFICER WILLIAM RENTZ, | : | |
| | : | |
| Defendant. | : | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PARTIAL MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Plaintiff' Tremar Harris files this response in opposition to Defendant William Rentz's partial motion for summary judgment and incorporated memorandum of law pursuant to federal rule of civil procedure 56 and local rule 56.1.

INTRODUCTON

On January 29, 2022, Plaintiff was a pre-trial detainee in the Appling County jail. As seen below, Defendant Corrections Officer William Rentz wrapped a chain around Plaintiff Tremar Harris's neck and pulled it tight for several seconds. Plaintiff was fully restrained at the time.



Defendant Rentz's undisputed, unconscionable, and shocking act makes him liable to Plaintiff as a matter of law under 42 USC 1983 and under state law. Plaintiff urges the Court to recognize the truly egregious nature of these undisputed facts and deny partial motion for summary judgment for Defendant Rentz. The Plaintiff fully incorporate his Brief in Support of Plaintiff's Partial Motion for Summary Judgment [Doc. 19-1], his Statement of Material Facts in Support of Plaintiff's Partial Motion for Summary Judgment [Doc. 19-2], his response to Defendant Rentz's Statement of Material Facts in Support Partial Motion for Summary Judgment, and Additional Statement of Facts.

FACTUAL STATEMENT

Plaintiff Tremar Harris was booked into the Appling County Detention Center on January 27, 2022. [Doc. 19-3] While in custody, Plaintiff soon began exhibiting symptoms of a mental breakdown over the course of several days. [Doc. 19-4] While Officers of the Appling County Detention Center responded by repeatedly putting Plaintiff in a restraint chair. [Id.] The Officers also ultimately called mental health professionals multiple times. [Id.] The mental health professionals responded to the jail twice over the course of several days. [Id.] In fact, Plaintiff is a diagnosed bipolar schizophrenic. [Doc. 19-5 at pp. 64-65]

On January 29, 2022, at approximately 4:45 pm, Defendant William Rentz came on shift as an Appling County Detention Officer. [Doc. 19-6 - Rentz Interrogatory No. 11] At the time Defendant Rentz arrived, Plaintiff was in a restraint chair. [Id.] Plaintiff freed his right hand from its restraint. [Doc. 20-Surveillance Video, 0:30-:045][1] In response, two Appling County Detention Officer entered Plaintiff's cell, presumably evaluating how to resecure Plaintiff's right hand; Plaintiff was calm and compliant. [Id., 1:30-2:15] Defendant Rentz (seen in the video wearing a beanie hat and skull sweatshirt) then entered Plaintiff's cell with several other Appling County Detention Officer; Plaintiff remained calm and

---

[1] Manually filed with the Court. [Doc. 20].

complaint. [Id., 2:30-3:45] Defendant Rentz secured Plaintiff's right hand to the restraint chair with shackles; Plaintiff remained calm and compliant. [Id.] After securing Plaintiff's hand, Defendant Rentz took a spare set of shackles, wrapped them around Plaintiff's neck, and pulled. [Id.] Defendant Rentz acknowledges pulling leg shackles around Plaintiff. [Doc. 19-6 - Rentz Interrogatory No. 11] He attempts to justify this action by claiming that he "used the leg restraints to pull Plaintiff into an upright position" because Plaintiff "was slouched over." [Id.] In this discovery response, Rentz offers no explanation as to why Plaintiff needed to be pulled into an upright position. None of the Appling County Detention Officers in the cell with Defendant Rentz and Plaintiff did anything to stop Defendant Rentz from wrapping the leg shackles around Plaintiff's neck; they just watched it happen. [Doc. 20 - Surveillance Video, 3:30-3:35] None of the Appling County Detention Officers did anything in immediate response to Defendant Rentz wrapping the leg shackles around Plaintiff's neck; they just walked out of the cell with Defendant Rentz, calm and casual. [Id.] In response, Plaintiff submitted a written grievance to Sheriff Adam Bell about the incident between him and Defendant Rentz. [Doc. 26-2 - Deposition of Tremar Harris taken June 28, 2024, at pg. 60:9-17.; Doc. 19-7 - Rentz Initial Disclosure 00024] In the grievance, Plaintiff claimed that Defendant Rentz "put a leg chain around [his] neck and proceded (sic) to chocke (sic) until [he] couldn't breathe, then told [him] that he was going to put [him] back in the cotton

field." [Id. ] Plaintiff reiterated these facts under oath during his deposition. [Doc. 19-8 - Harris Depo., pp. 53, 56, 78-79]  Plaintiff never received a response to his written grievance. Doc. 26-2 at pgs. 61:20 – 62:4. Plaintiff was release from jail a few days after the incident. [Doc. 26-2 – Entire Harris Depo., pp. 79:20-80:2] There is no evidence that the Appling County Sheriff's Office ever formally responded to Plaintiff's grievance. The Georgia Bureau of Investigation was called to investigate Defendant Rentz's conduct, and as a result of the investigation, the Appling County Sheriff's Office terminated Defendant Rentz. [Doc. 19-9 - Rentz Interrogatory No. 18]

In response to all substantive deposition questions, Defendant Rentz invoked his Fifth Amendment right against self-incrimination. [Doc. 19-10 - See generally, Rentz Depo.] Defendant Rentz refused to answer questions pertaining to his education and training [Id., pp. 12-13], his employment history [Id., pp. 13-14], and the status of the criminal charges pending against him, [Id., p. 14-16]. More importantly, Defendant Rentz invoked his right against self-incrimination when asked whether he wrapped leg chains around Plaintiff's neck and pulled, [Id., pp. 19-20], whether he applied pressure to the chains around Plaintiff's neck [Id., p. 20], whether he intended to cause Plaintiff to choke, [Id., p. 25] whether Plaintiff was unable to breathe because of the leg chains, [Id. pp. 25-26] and whether he was going put Plaintiff "back in the cotton field." [Id. p. 20]

ARGUMENT AND CITATION TO AUTHORITY

Applying the statutory and judicial standards to the facts of this case, no genuine issue exists to be tried as it relates to Defendant Rentz's liability on Plaintiff's Fourteenth Amendment claim and Plaintiff's State Law Battery claim.

I.      Motion for Summary Judgment Standard.

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson, 477 U.S. at 248)). The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the non-moving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996)

(citing Augusta Iron and Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). All reasonable doubts, however, are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). The plaintiff is entitled to an adverse inference in response to the unanswered questions and counsel is entitled to argue it. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). Specifically, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Id. at 318. The Supreme Court has instructed that "silence" in the face of an accusation is a relevant fact and is "often evidence of the most persuasive character." Id. at 319. This means that the trier-of-fact may consider a person's silence or failure to contest an accusation as evidence of acquiescence in the accused conduct. Id.

 II. Defendant Rentz Violated Plaintiff's Fourteenth Amendment by Knowingly Using Forced Against him that was Objectively Unreasonable.

To establish an excessive force claim in violation of the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). "Objective reasonableness turns on the facts and circumstances of each particular case." Id, (internal quotation and citation omitted). "[I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally

related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." Id. (internal quotation marks and citation omitted).

A court is required to make the determination of objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight" and must account for the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained." Id. (internal quotation and citation omitted, alteration accepted). Kingsley instructs that a court consider the following non-exhaustive factors in determining reasonableness: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Id.

It is undisputed that Defendant Rentz intended to punish and cause physical bodily harm to the Plaintiff. Specifically, it is undisputed that Defendant Rentz and other Defendants restrained Plaintiff in a restraint chair; the chair bound Plaintiff's shoulders, wrists, and ankles. [Surveillance Footage, 3:30-3:45] With Plaintiff completely restrained and helpless, Defendant Rentz wrapped a

leg shackle chain around Plaintiff's neck and pulled, maintaining pressure around Plaintiff's neck for several seconds. [Id.] Surveillance video footage shows that the chain caused Plaintiff to throw his head backwards and open his mouth – choking. [Id.] There is no conceivable justification for this type of force. The Court should find as a matter of law that Defendant Rentz is liable to Plaintiff for excessive and unreasonable use of force.

Upon review of the video evidence in this matter, this Court should readily conclude that Defendant Rentz's actions cut heavily against the moral dignity, decency, and goodwill of humanity. This is not a case where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it ...." Scott v. Harris, 550 U.S. 372, 378-80 (2007) (holding that, where video evidence is at issue, the court must "view[] the facts in the light depicted by the videotape."). The video evidence is conclusive and irrefutable in this case.

### III. Defendant Rentz in Not Entitled to Qualified Immunity

Summary judgment is appropriate on Plaintiff's Fourteenth Amendment claim against Defendant Rentz in his individual capacity. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

> deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (2012).

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. Moreno v. Turner, 572 F. App'x. 852, 855 (11th Cir. 2014). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing: "(1) the defendant violated a constitutional right, and the right was clearly established at the time of the alleged violation." Moreno, 572 F. App'x at 855. Here, and aforementioned, it is undisputed the Defendant Rentz was performing a discretionary function at the time he used unjustifiable and excess force towards the Plaintiff.

In terms of the second prong of the qualified immunity analysis, "[f]or a 'right' to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." Rodgers v. Horsley, 39 F.3d 308, 310 (11th Cir. 1994) (per curiam) (quotation and citation omitted) (emphasis in original). Additionally, the court has held that "a defense of qualified immunity is not available in cases alleging excessive force. . because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution." Skrtich v. Thornton, 280 F.3d 1295, 1301(11th Cir. 2002). Further, the court has held that the use of excessive force sadistically and maliciously for the very purpose of causing harm "is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." Johnson v. Breeden, 280 F.3d 1308, 1321-22 (11th Cir. 2002). In determining whether malicious and sadistic intent existed, the court consider: (1) the need for the application of force; (2) the relationship between the need for force and the amount of force used; (3) "the extent of the resulting injury;" (4) the threat reasonably perceived by the responsible officials; (5) and "efforts made to temper the severity of a forceful response." Danley v. Allen, 540 F.3d 1298, 1307, (11th Cir. 2008) (quotation and citation omitted). From these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought

necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Skrtich, 280 F.3d at 1300-01 (quotation and citation omitted).

As previously established, undisputed evidence is on that record that clearly establishes that Defendant Rentz acted with malicious and sadistic intent when he wrapped a leg shackle chain around Plaintiff's neck at 3:30 in the surveillance footage. The Court need not look beyond the incontrovertible video evidence that shows Defendant Rentz's malicious, heinous and deplorable acts towards the Plaintiff. It is undisputed the Defendant Rentz intentionally choked Plaintiff around the neck, with a metal chain, and did so without any justification whatsoever.

IV. However, Defendant Rentz violated the Plaintiff's Fourth Amendment Rights even if the Plaintiff's injuries were deemed de minimis

If no probable cause authorizes an arrest, *any* use of force to effectuate the unlawful arrest is a violation of the Fourth Amendment. Bashir v. Rockdale County, Ga, 445 F.3d 1323, 1331-33 (11th Cir. 2006); Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (holding that although the use of force below a de minimis threshold ordinarily will not be actionable, even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect). This rule makes sense because if a stop or arrest is

illegal, "then there is no basis for any threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop or arrest claim." Jackson v. Sauls, 206 F.3d 1156, 1170-71 (11th Cir. 2000). A plaintiff's damages for unlawful arrest, therefore, include damages for any injury, pain and suffering, and mental anguish caused by the force used to effect that false arrest, regardless of whether the force would have been reasonable or excessive had there been probable cause. Williamson v. Mills, 65 F.3d 155, 158-59 (11th Cir. 1995). *"However unnecessary, de minimis force is not unconstitutional when an officer is engaged in a lawful action.* See Croom v. Balkwill *, 645 F.3d 1240, 1252 (11th Cir. 2011)* See Richmond v. Badia*, 47 F.4th 1172, 1187 (11th Cir. 2022).* Here, the Defendant Rentz was not engaged in a lawful or legitimate action when he deliberately used leg restraints to choke the Plaintiff who was restrained in a restraint chair. Plaintiff was unable to breathe while being choked and suffered a sore neck for days. Additionally, Defendant Rentz's racist and hateful statement that "he was going to put the Plaintiff back in the cotton field" while chocking the Plaintiff, goes against all good peace and dignify of mankind and shocks the conscience of all who see the video of Defendant Rentz's evil and sadistic act. Therefore, since Defendant Rentz was not engaged in a lawful or legitimate action when he deliberately used leg restraints to choke the Plaintiff,

the Plaintiff's constitutional claims survive summary judgement.

V.   Plaintiff's Exhausted his Administrative Remedies Prior to Suit

The failure to exhaust administrative remedies is an affirmative defense. The burden therefore is on the defendant to show that the plaintiff has not exhausted properly his administrative remedies. See Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Whatley v. Smith, 898 F.3d 1072 (11th Cir. 2018). In response, Plaintiff submitted a written grievance to Sheriff Adam Bell about the incident between him and Defendant Rentz. Plaintiff never received a response to his written grievance. Plaintiff was release from jail a few days after the incident. There is no evidence that the Appling County Sheriff's Office ever formally responded to Plaintiff's grievance. Defendant Rentz has failed to carry his burden that the Plaintiff has not properly exhausted his available administrative remedies. *Id*.; see also Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

The Eleventh Circuit has decided that district courts must follow the two-step process outlined in Turner when considering whether dismissal for failure to exhaust is appropriate under Fed. R. Civ. P. 12(b)(6). Under *Turner*, the district court first "looks to the factual allegations in the defendant's motion to dismiss and those in

the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1082; Whatley v. Smith, supr*a*.

At step two of the *Turner* analysis, the district court must "make specific findings in order to resolve the disputed factual issues related to exhaustion," with the burden of proof remaining on the defendant to show "that the plaintiff has failed to exhaust his available administrative remedies." *Id.* After making specific findings of fact, the district court "then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083. Defendant Rentz nevertheless fails to carry his burden of proof on the issue as to whether the Plaintiff failed to exhaust his administrative remedies. The inescapable conclusion that must be reached from the conflicting declarations submitted on behalf of the parties, when taking the Plaintiff's version as true, is that the Plaintiff submitted a written grievance to Sheriff Adam Bell about the incident between him and Defendant Rentz.

These facts are uncontradicted in the record of this case and, therefore, in the context of a motion for summary judgement, even if contradicted, which they are not, must be accepted as true together with any reasonable inferences therefrom. Geter v. Baldwin State Prison, supra. Under the two-step Turner analysis, the Defendant's a motion for summary judgement must be denied.

 VI. Defendant Rentz Is Not Entitled to Official Immunity Under Georgia Law for His Discretionary Acts Because He Acted With "Actual

Malice."

Under Georgia law Defendant Rentz is not entitled to official immunity under Georgia law for his discretionary acts unless he acted with "actual malice." Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012) (citing Merrow v. Hawkins, 266 Ga. 390, 391 (1996)). "Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." Tittle v. Corso, 256 Ga. App. 859, 862 (2002) (footnote omitted). It is undisputed that Defendant Rentz was acting in the scope of his discretionary authority when he wrapped the leg shackles around Plaintiff's throat. In weighing the facts in the light most favorable to Defendant Rentz, undisputed evidence clearly established that Defendant Rentz acted with "actual malice."

Again, video evidence shows Defendant Rentz choking Plaintiff without any justification of any kind. As a result of Defendant Rentz's actions, Plaintiff sustained physical and emotional injuries. Pursuant to the Georgia Common Law, a recovery for battery requires a showing of: 1) Intentional contact with the person of another; 2) Either of an insulting or provocative nature, or causing that other person physical harm; 3) Which was unauthorized; and 4) Damages. Ellison v. Burger King Corp., 294 Ga. App. 814, 670 S.E.2d 469 (2008). Defendant Rentz made an intentional unjustifiable and unlawful harmful physical contact with Plaintiff. Defendant Rentz without legal justification physically assaulted Plaintiff while Plaintiff was

restrained in a restraint chair by use of a leg shackle chain around Plaintiff's neck. Therefore, such actions under Georgia law constitute as a battery.

CONCLUSION

Defendant Rentz's treatment of Plaintiff was reprehensible. It is almost difficult to believe that, in the twenty-first century, this society is still faced with such facts, where a White jailor would feel so entitled as to wrap a chain around the neck of Black detainee. For the foregoing reasons, Plaintiff is entitled to summary judgment against Defendant Rentz on his Fourteenth Amendment claim and his state law battery claim at this time.

Respectfully submitted this 19th day of September 2024.

/s/ *Harry M. Daniels*
Harry M. Daniels, Esq.
Georgia State Bar No. 234158
Pro Hac Vice

LAW OFFICES OF HARRY M. DANIELS, LLC
4751 Best Road, Suite 490
Atlanta, Georgia 30337
Telephone: (678) 664-8529
Facsimile: (800) 867-5248
daniels@harrymdaniels.com

/s/ *M. Waite Thomas*
M. Waite Thomas, Esq.
Georgia State Bar No. 617667

                                                    Attorney for Plaintiff

TAYLOR ODACHOWSKI SCHMIDT  
& CROSSLAND, LLC  
300 Oak Street, Suite 200  
St. Simons Island, Georgia 31522  
Telephone: (912) 634-0955  
Facsimile: (912) 638-9739  
wthomas@tosclaw.com

## CERTIFICATE OF SERVICE

This hereby certifies that on this day, I electronically filed the Plaintiff's Amended Complaint with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

                                                    /s/ *Harry M. Daniels*
                                                    Harry M. Daniels, Esq.
                                                    Georgia State Bar No. 234158
                                                    Pro Hac Vice

LAW OFFICES OF HARRY M. DANIELS, LLC
4751 Best Road, Suite 490
Atlanta, Georgia 30337
Telephone: (678) 664-8529
Facsimile: (800) 867-5248
daniels@harrymdaniels.com